**No. 25-2143**

---

**In the United States Court of Appeals**
**for the Seventh Circuit**

---

ERIC STUPAK,

Plaintiff-Appellant

v.

MONT DU LAC SNOWSPORTS, LLC
and NOVA CASUALTY COMPANY,

Defendants-Appellees

---

Appeal from the United States District Court
for the Western District of Wisconsin
Civil Action No. 3:24-cv-00291
The Honorable James D. Peterson, Presiding

---

# REPLY BRIEF OF PLAINTIFF-APPELLANT ERIC STUPAK

---

Taylor Brandt Cunningham
BOLT LAW FIRM
2150 Third Avenue, Ste. 350
Anoka, MN 55303
(763) 406-7000

*Counsel for Plaintiff-Appellant*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ………………………….……………….……………. iii

ARGUMENT ……………………..……………………………………………….. 1

I. At a minimum, a genuine issue of fact exists as to whether Stupak had implied consent to use the slides …………………………… 3

A. The existence of implied consent is generally a question of fact …………………………………………………………..… 3

B. Mont du Lac's reliance on the district court's improper weighing of the evidence must be rejected …………………….….. 4

C. The caselaw cited by Mont du Lac demonstrates summary judgment is not appropriate in this case …………………………….. 5

D. Stupak's "considering all the circumstances" argument is properly before this Court ……………………………………..… 9

II. Even if Stupak was a trespasser as a matter of law, there is a genuine issue of fact regarding whether Mont du Lac acted wantonly or recklessly …………………………………….…. 10

III. Mont du Lac's "assumption of risk" argument fails because its acts and omissions are not entitled to protection under Wisconsin law ……………………………………………………….... 12

A. Mont du Lac cannot claim immunity without proof it met the signage requirements ……………………………………….... 12

B. Even if the signage requirements were met, Stupak was not injured by an enumerated "risk or condition." ………………... 14

IV. Mont du Lac cannot rely on the public-policy factors to sidestep liability at the summary judgment stage …………………...... 15

CONCLUSION …………………….…………………………………….……………… 16

CERTIFICATE OF COMPLIANCE …...……………………….…………………… 18

CERTIFICATE OF SERVICE …...…………………………………………………… 18

## TABLE OF AUTHORITIES

**Cases**

*Banuelos v. Univ. of Wisconsin Hosps. & Clinics Auth.*
406 Wis. 2d 439, 988 N.W.2d 627 (Wis. 2023) …...……………………..… 13

*Donaldson v. K & R Cross, Inc.*
375 Wis. 2d 798, 899 N.W.2d 738 (Wis. Ct. App. 2017) .............................. 8, 9

*Erdmann ex rel. Laughlin v. Progressive N. Ins. Co.*
332 Wis. 2d 147, 796 N.W.2d 846 (Wis. Ct. App. 2011) .......................... 15, 16

*Fandrey ex rel. Connell v. Am. Fam. Mut. Ins. Co.*
272 Wis. 2d 46, 680 N.W.2d 345 (Wis. 2004) ................................................. 15

*Hofflander v. St. Catherine's Hosp., Inc.*
262 Wis. 2d 539, 664 N.W.2d 545 (Wis. 2003) .................................................. 4

*Jarrett v. Lab. & Indus. Rev. Comm'n*
233 Wis. 2d 174, 607 N.W.2d 326 (Wis. Ct. App. 2000) ................................ 13

*McCottrell v. White*
933 F.3d 651 (7th Cir. 2019) ........................................................................... 5

*Morgan v. Pennsylvania Gen. Ins. Co.*
87 Wis. 2d 723, 275 N.W.2d 660 (Wis. 1979) .................................................. 16

*Newell v. Schultz Bros. Co.*
239 Wis. 415, 1 N.W.2d 769 (Wis. 1942) ..................................................... 7, 8

*Rintelman v. Boys & Girls Clubs of Greater Milwaukee, Inc.*
288 Wis. 2d 394, 707 N.W.2d 897 (Wis. Ct. App. 2005) ................................ 14

*Ryan v. O'Hara*
241 Wis. 389, 6 N.W.2d 209 (Wis. 1942) ..................................................... 7, 9

*Sattelberg v. United States*
No. 12-CV-898, 2013 WL 6058955 (W.D. Wis. Nov. 18, 2013) .................... 6, 8

*Zillmer v. Orpheum Theatre Project, LLC*
292 Wis. 2d 484, 713 N.W.2d 191 (Wis. Ct. App. 2006) .................................. 5

**<u>Statutes</u>**

Wis. Stat. § 167.33 ........................................................................... 12, 13, 14, 15

Wis. Stat. § 895.526 ........................................................................................... 12

**<u>Other</u>**

Wis. JI—Civil 8025 ............................................................................................ 10

# ARGUMENT

For the first time in its appellate brief—and without any evidentiary support in the record—Mont du Lac attempts to deflect responsibility for its own negligence by portraying Eric Stupak as an "intoxicated," mischievous individual who roamed the resort at his leisure. It claims that the presence of alcohol and prescription medications in his system played a role in causing his injuries. (*See* Appellee's Br. at 24, 28, 42). This tactic was not unforeseen; in fact, Stupak anticipated this line of argument. (*See* Appellant's Br. at 7 n.3.)

Mont du Lac's argument is unsupported by the record. **Full stop**. There is no evidence that intoxication influenced Stupak's decision-making or otherwise contributed to the incident. The record shows that over the course of the entire day leading up to the injury, Stupak consumed only three beers. The reference to benzodiazepines is equally misleading; those substances were introduced into his system by emergency medical personnel after the incident, not before.

The only causation-related evidence in the record comes from a friend of Stupak, who testified that—based on what he observed, and the small amount Stupak drank—he would be surprised if Stupak was intoxicated at the time of the incident. (ECF No. 57 ¶ 30.) In short, Mont du Lac's attempt to shift blame onto Stupak is not only unfounded but plainly contradicted by the record.

On the other hand, when the record is viewed in the light most favorable to Stupak, the record does establish the following regarding Mont du Lac and the day of the incident:

1. Stupak was a longtime season-pass holder and, on the day of the incident, was utilizing his season pass to enjoy activities with friends at the resort. (ECF No. 51 ¶¶ 30, 47-48; ECF No. 57 ¶ 1).
2. Stupak's friend asked permission to use the slide and Mont du Lac's manager did not say "no," but instead said "I'm not going to tell anyone." (ECF No. 57 ¶ 4).
3. There was a "Ride Closed" sign attached to a chain, which was supposed to be clipped across the slide when it was closed. It was **not** at the time of the incident—it was coiled up laying on the side. (*Id.* ¶¶ 15, 39-41, 73).
4. The tubes used to go down the slide were not locked up or otherwise put away—they were scattered all around, in violation of the manufacturer's recommendation. (*Id.* ¶¶ 13, 38, 70, 117).

Based on the evidence in this case, a jury could easily find that—at minimum—Stupak and his friends had implied consent to use the slides and that Mont du Lac's acts and omissions played a substantial part in causing Stupak's injuries. Stupak respectfully requests this Court reverse and remand.

## I. At a minimum, a genuine issue of fact exists as to whether Stupak had implied consent to use the slides.

At the heart of Mont du Lac's defense is an effort to convert a disputed implied-consent question into a question of law. But Wisconsin's premises-liability framework does not allow that move at summary judgment. Implied consent is an objective inquiry that depends on the totality of the circumstances, and where the record supports competing reasonable inferences about whether permission was given, the plaintiff's status—and thus the landowner's duty—must be resolved by a jury. Mont du Lac asks this Court to affirm by weighing that evidence and locking in one inference as the only reasonable one. The record does not permit that result.

Stupak was not a stranger wandering into a hidden, off-limits area. He was a paying season-pass holder at an attraction Mont du Lac holds out for customer use, and the group did not proceed until it asked a Mont du Lac manager for permission. The manager's response—"I'm not going to say anything"—followed a direct request and can reasonably be understood as tacit authorization. At minimum, that interaction creates a genuine factual dispute as to implied consent, making summary judgment inappropriate.

### A. The existence of implied consent is generally a question of fact.

Mont du Lac invites this Court to treat implied consent, and therefore trespasser status, as a question of law. (Appellee's Br. at 20). Wisconsin law

forecloses that approach. The Wisconsin Supreme Court has directed that "[w]here there is a genuine issue of fact as to whether a person had implied consent and is therefore a frequenter and not a trespasser, the resolution of that issue should be made by a jury." *Hofflander v. St. Catherine's Hosp., Inc.*, 262 Wis. 2d 539, 605, 664 N.W.2d 545 (Wis. 2003) (citing Wis JI—Civil 1901). That is precisely this case: the record permits competing reasonable inferences on whether Mont du Lac, through its manager's response to a direct request, implicitly authorized the group's use of the slides. Because that factual dispute is material, summary judgment was improper.

**B. Mont du Lac's reliance on the district court's improper weighing of the evidence must be rejected.**

Unsurprisingly, Mont du Lac asks this Court to affirm by endorsing the district court's declaration that "in the context of all the obvious cues that the slides were closed, no reasonable person would infer from Schulz's alleged promise to keep mum that they had implied permission to use the slides." (Doc. 62 at 7; App. 007). But that conclusion is not a legal determination—it is a factual one. It reflects the district court's decision to treat Mont du Lac's preferred inference ("no consent") as the only permissible inference, while discounting evidence that supports the opposite inference. That is precisely what summary-judgment standard forbids.

This Court has repeatedly emphasized that "[o]n summary judgment, a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *McCottrell v. White*, 933 F.3d 651, 657–58 (7th Cir. 2019) (cleaned up).

Wisconsin's implied-consent inquiry is objective and turns on the totality of the circumstances. See *Zillmer v. Orpheum Theatre Project, LLC*, 2006 WI App 78, ¶ 13, 292 Wis. 2d 484, 713 N.W.2d 191 (Wis. Ct. App. 2006). On Stupak's evidence, Hamann did what a reasonable patron would do when faced with uncertainty: he sought out a Mont du Lac manager and asked whether the group could use the slides. The manager did not say "no." He responded, "I'm not going to say anything." A reasonable jury could interpret that response—made directly in response to a permission request—as tacit authorization, particularly given the group's testimony that they understood Schultz's response as permission and would not have proceeded if told "no." The district court's "no reasonable person" conclusion improperly resolves that inference against Stupak.

Nor can Mont du Lac salvage summary judgment by labeling the "closed cues" as "obvious." The record supports competing inferences about what those cues communicated and how a reasonable patron would understand them in

context. The "Ride Closed" sign was connected to a chain at the top of the slide platform, but the chain—designed to block access when clipped across—was unclipped and coiled with the sign on the side. (ECF No. 57, ¶¶ 15, 39–41, 73). And the slide tubes were scattered at the top, middle, and bottom of the hill—not locked or tied up, contrary to the manufacturer's recommendation. (*Id.* ¶¶ 13, 38, 70, 117). At most, those facts create a dispute about the weight of the "closed cues" and what inference a reasonable person would draw—questions for a jury, not a court on summary judgment.

### C. The caselaw cited by Mont du Lac demonstrates summary judgment is not appropriate in this case.

In his principal brief, Stupak addressed many of the cases that Mont du Lac relied on below. (Appellant's Br. at 24-27). Therefore, Stupak will only address the cases cited by Mont du Lac for the first time on appeal.

First, *Sattelberg v. United States*, No. 12-CV-898, 2013 WL 6058955 (W.D. Wis. Nov. 18, 2013). In that case, the federal district court found the plaintiff—a visitor who slipped and fell in a parking lot reserved for hospital employees—was a trespasser as a matter of law. *Id.* at *1. In so holding, the district court noted that the plaintiff ignored multiple, conspicuous signs that warned visitors that the parking lot was for use by employees only and that parking in the lot could result in a "trespassing fine." *Id.* at *1-2. Here, the only visible sign on the slide—the

"Ride Closed" sign—was unclipped and coiled up on the side. This would suggest to a reasonable person that the slide was *open*, not closed.

Second, *Newell v. Schultz Bros. Co.*, 239 Wis. 415, 416, 1 N.W.2d 769, 770 (Wis. 1942). In that case, the court found the plaintiff—a store patron that entered a restricted area of the store without permission—was a trespasser as a matter of law. In reaching that conclusion, the court emphasized that there was "a large white cardboard sign with large black lettering reading 'Employees Only,'" and that despite this, the plaintiff entered the area anyway. 239 Wis. at 417. Here, again, the only sign on the slide—the "Ride Closed" sign—was unclipped and coiled up on the side. This would suggest to a reasonable person that the slide was *open*, not closed.

Third, *Ryan v. O'Hara*, 241 Wis. 389, 6 N.W.2d 209 (Wis. 1942). There, the court found that the plaintiff—a tavern patron who injured his hand on an unguarded fan that was located over seven feet from the floor—was a trespasser as a matter of law. The court noted the complaint was "silent as to any reason or excuse for plaintiff's hand coming into contact with the blades of the fan where it was located in defendant's place of business." 241 Wis. at 392. Here, unlike in *Ryan*, Stupak did not wander onto the slide for no reason. He was a paying season-pass holder who intended to use the attraction and, crucially, proceeded only after his group asked a Mont du Lac manager for permission and received the response,

"I'm not going to tell anyone." That is affirmative context from which a reasonable jury could infer implied consent.

Finally, *Donaldson v. K & R Cross, Inc.*, 2017 WI App 34, 375 Wis. 2d 798, 899 N.W.2d 738 (Wis. Ct. App. 2017). In that case, the court held that an intoxicated restaurant patron who was injured after entering a stairway and landing was a trespasser as a matter of law. *Id.* ¶¶ 2–6. Critical to that holding, the record showed the area was never held out for public use: the stairway and landing were unlit, the door at the top was kept locked, and police observed cobwebs—facts that collectively signaled the space was not in customary use. *Id.* ¶ 16.

*Donaldson* turned on objective, physical conditions showing a wholly off-limits area that the public was never invited to use (dark, locked, cobwebbed). Here, by contrast, the slide was an attraction Mont du Lac affirmatively holds out for patron use, and Stupak's group proceeded only after seeking out a manager and receiving a response a jury could reasonably interpret as permission—creating at least competing inferences on implied consent that *Donaldson* did not present.[1]

In sum, the cases Mont du Lac cites for the first time on appeal underscore why summary judgment was improper here. *Sattelberg* and *Newell* involved plaintiffs who disregarded clear, conspicuous warnings and entered areas

[1] Mont du Lac also cites *Anderson v. Green Bay & W. R. R.*, 99 Wis. 2d 514, 299 N.W.2d 615 (Wis. Ct. App. 1980). Because it is entirely inapposite, Stupak does not address it here.

unmistakably restricted from public use; *Ryan* involved a complaint devoid of any explanation for why the plaintiff came into contact with the hazard; and *Donaldson* involved physical conditions that objectively signaled a wholly off-limits area (dark, locked, cobwebbed) never held out for patrons. None of those features are present here. The slide was an attraction Mont du Lac holds out for customer use, the only "Ride Closed" sign was unclipped and coiled to the side, and—most importantly—Stupak's group sought out a manager and received a response a jury could reasonably interpret as permission. At minimum, those facts permit competing reasonable inferences on implied consent, which must be resolved by a jury rather than on summary judgment.

**D. Stupak's "considering all the circumstances" argument is properly before this Court.**

Before the district court, Stupak detailed the circumstances surrounding the incident and argued that the record, at a minimum, presented a factual dispute regarding his status as a trespasser at the time. (ECF No. 49, 52). Now, Mont du Lac argues Stupak did not present to the district court his contention that there is a fact question "considering all the circumstances." Although Stupak's appellate brief certainly organizes his argument differently than in the district court, Stupak's contentions were presented (and considered) by the district court.

For example, in his appellate brief, Stupak argues the relationship between him and Mont du Lac is relevant to the consent analysis. (Appellant's Br. at 20-22).

This was addressed in the district court. (ECF No. 49 at 2-3). Stupak also argues that Mont du Lac's knowledge of Stupak's presence is relevant. He addressed this below. (*Id.* at 3). Finally, Stupak argued that the "arrangement and design of the premises" raised a fact issue. This was discussed below. (*Id.* at 3-4).

Even if this Court finds Stupak did not adequately raise his "considering all the circumstances." argument, there is no dispute that Stupak addressed the effect of the acts and omissions of Mont du Lac's manager. Because these acts and omissions alone create a fact issue, this Court should reverse and remand.

## II. Even if Stupak was a trespasser as a matter of law, there is a genuine issue of fact regarding whether Mont du Lac acted wantonly or recklessly.

Mont du Lac's fallback position is that—even if Stupak were a trespasser—the record contains no evidence of willful, wanton, or reckless conduct sufficient to warrant submission of the case to a jury.

Wisconsin's standard asks whether the conduct was "so unreasonable and dangerous" that the actor knew or should have known "it [was] highly probable" harm would result. Wis. JI—Civil 8025. A reasonable jury could find that standard is met here. Taking Stupak's evidence as true, the resort manager was directly asked for permission to use the slides and responded, "I'm not going to tell anyone"—a statement a jury could view not as neutrality, but as a green light to proceed.

And the risk was not subtle: a jury could find Schultz knew or should have known the slides were unattended, the tubes were left out and unsecured, and the safety "bumpers" were not inflated—conditions specifically designed to prevent the very kind of catastrophic injury suffered by Stupak.

Mont du Lac tries to relabel this as "just negligence," but that is exactly the sort of inference-drawing reserved for a jury: whether knowingly allowing patrons to use an unattended tubing slide with a key safety feature disabled—without any warning—reflects mere carelessness or reckless indifference to a highly probable injury.

Nor does Mont du Lac gain anything by arguing Stupak "expanded" his theory on appeal. The core point has been the same all along: Mont du Lac's on-duty manager's response to a direct request to use the attraction is evidence of wanton or reckless conduct. And even under Mont du Lac's preferred version—where Schultz supposedly said "no"—a jury could still find recklessness if Schultz realized the group was going to proceed anyway and nonetheless failed to warn them about the non-inflated bumpers and other dangerous conditions.

In short, Mont du Lac's argument asks this Court to do what summary judgment forbids: decide, as a matter of law, what inferences must be drawn from a manager's words and omissions in the face of a dangerous situation. The record supports competing inferences—and that is enough to get to a jury.

## III. Mont du Lac's "assumption of risk" argument fails because its acts and omissions are not entitled to protection under Wisconsin law.

For the first time, Mont du Lac seeks "immunity" under Wisconsin's Alpine Immunity Statute, Wis. Stat. §§ 167.33 and 895.526. (Appellee's Br. at 32) ("Stupak argues . . . Defendant should not enjoy the immunity granted by Wisconsin statutes 167.33 and 895.526[.]"). This is a brand-new argument. In the district court, Mont du Lac specifically argued it was **not** seeking "immunity" under the statutes. (ECF No. 54 at 9) ("Defendants did not argue to be dismissed on the basis of immunity[.]"). Since the only protection afforded by the statutes is immunity, Mont du Lac's argument must fail in its entirety.

However, even if this Court overlooks Mont du Lac's failure to properly preserve (or understand) its arguments, Stupak explains below why the statutes do not afford Mont du Lac immunity.

### A. Mont du Lac cannot claim immunity without proof it met the signage requirements.

To be afforded the immunity granted under the statutes, "[a] ski operator who fulfills **all** of his or her duties under s. 167.33 (3) and (4) owes no further duty of care to a participant in an alpine sport and is not liable for an injury or death that occurs as a result of any condition or risk accepted by the participant under sub. (2)." Wis. Stat. § 895.526(4)(a) (emphasis added). "All" means "all." *See*

*Banuelos v. Univ. of Wisconsin Hosps. & Clinics Auth.*, 406 Wis. 2d 439, 458, 988 N.W.2d 627, 637 (Wis. 2023). Because there is zero evidence in the record that Mont du Lac complied with subdivision 4(a) of section 167.32, it is not entitled to immunity.

Subdivision 4(a) requires a "ski area operator" to place a map of "trails and terrains" in a particular place. Mont du Lac argues this requirement is "immaterial" to the facts at hand. (Appellee's Br. at 36). A comprehensive reading of the statute, *see Jarrett v. Lab. & Indus. Rev. Comm'n*, 2000 WI App 46, ¶ 8, 233 Wis. 2d 174, 180, 607 N.W.2d 326, 329 (Wis. Ct. App. 2000), reveals subdivision 4 is absolutely applicable.[2]

Let's walk through the statute. Subdivision 4(a) applies to all "ski area operator[s]." A "'[s]ki area operator' means a person that owns or is responsible for operating a ski area or its affiliates." Wis. Stat. § 167.32(1)(j). A "'[s]ki area' means trails, terrains, and other outdoor areas that are used by individuals engaged in alpine sports and that is administered as a single enterprise by a ski area operator." *Id.* (1)(h). Then, an "alpine sport" means "skiing, sledding, biking, or **tubing**." *Id.* (1)(ag) (emphasis added). Thus, accepting Mont du Lac's argument that Stupak was engaged in the type of tubing covered by the statutes, Mont du

[2] For purposes of argument only, Stupak assumes—without conceding—that the alpine-sports immunity statutes apply to use of the slides at issue.

Lac is a "ski area operator" for purposes of subdivision 4(a). And it concedes there is no evidence in the record regarding the signage required by subdivision 4(a).

For this reason alone, Mont du Lac has not met its burden to establish it is entitled to immunity and is therefore not entitled to summary judgment. *See Rintelman v. Boys & Girls Clubs of Greater Milwaukee, Inc.*, 288 Wis. 2d 394, 412, 707 N.W.2d 897, 906 (Wis. Ct. App. 2005).

### B. Even if the signage requirements were met, Stupak was not injured by an enumerated "risk or condition."

Even assuming the signage requirements in section 167.32 were met, Mont du Lac is still not entitled to immunity—and therefore summary judgment—because Stupak was not injured from an enumerated "risk or condition." *See* Wis. Stat. § 167.33(2).[3]

First, "[t]he risk of injury or death on trails and terrains that fall away or drop off towards hazards." Wis. Stat. § 167.33(2)(e). Mont du Lac argues this risk is applicable because "the slide did 'fall away . . . toward hazards." (Appellee's Br. at 38). It didn't address Stupak's arguments that the slide is not a "trail" or "terrain" and that trees are not an enumerated "hazard." Wis. Stat. § 167.33(1)(e).

[3] Mont du Lac argues "nothing in the law requires a ski area operator to point out which single condition or risk caused a plaintiff's injury to benefit from application of the law." (Appellee's Br. at 37). For obvious reasons, this cannot be true. If Mont du Lac wants summary judgment, it must prove its entitled to such relief. A blanket argument that "I'm entitled to immunity" is not enough. *See Rintelman* 288 Wis. 2d at 412.

This is telling (and dispositive). Because a slide is neither a "trail" nor a "terrain" and because trees are not a "hazard," the risk identified in subdivision 2(e) is not applicable.

Second, "[t]he greater risk of collision, injury or death in treed areas, in areas of where competitions are held, and in areas of freestyle terrain." Wis. Stat. § 167.33(2)(h). Here, the slide was the risk, not the trees. The slide—unlike many skiing runs or slopes—did not have a tree on it. Mont du Lac does not address this argument. Because the trees were not the risk (but rather the slide itself), the risk identified in subdivision 2(h) is not applicable.

**IV. Mont du Lac cannot rely on the public-policy factors to sidestep liability at the summary judgment stage.**

We close with the public-policy factors, which preclude liability only in the "extraordinary case" where imposing liability would "shock the conscience of society." *See Erdmann ex rel. Laughlin v. Progressive N. Ins. Co.*, 332 Wis.2d 147, 155, 796 N.W.2d 846 (Wis. Ct. App. 2011); *Fandrey ex rel. Connell v. Am. Fam. Mut. Ins. Co.,* 272 Wis. 2d 46, 64, 680 N.W.2d 345 (Wis. 2004). Stupak will only address two specific points made by Mont du Lac and otherwise rest on his principal brief.

First, Mont du Lac argues "Stupak did not oppose the argument that Stupak cannot show that any alleged negligence by Mont du Lac was a substantial factor in bringing about his injuries[.]" (Appellee's Br. at 40). This is simply not true. Stupak thoroughly addressed the "substantial factor" issue in the district court.

(Doc. 49 at 23-24). Moreover, whether an act or omission constitutes a "substantial factor" is a jury question. *See Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis. 2d 723, 735, 275 N.W.2d 660 (Wis. 1979). Second, Mont du Lac argues "Stupak's new reliance on facts such as 'failing to say 'no', not locking up the tubes, failing to 'put up' the Ride Closed sign' does not change the causation analysis." This reliance is anything but new—it was repeated time and again below. (Doc. 49 at 23, 24, 26).

Lastly, Mont du Lac argues "[t]here is no sensible stopping point" if liability is imposed in this case. (Appellee's Br. at 40). This is dramatic. Again, Mont du Lac could have "taken a number of steps to prevent" Stupak's injury, including, among other things, saying "no," locking up the tubes, and utilizing the "Ride Closed sign. *See Erdmann*, 332 Wis. 2d at 155 (holding tortfeasors "could have taken a number of steps to prevent" victims from being injured).

In sum, this is anything but an "extraordinary case." This is a "run-of-the-mill" premises liability case, "rendering the public policy factors inapplicable." *Erdmann*, 332 Wis. 2d at 155.

## **CONCLUSION**

Eric Stupak didn't trespass onto some hidden, off-limits corner of the resort. He was a longtime season-pass holder at an attraction Mont du Lac holds out for customer use, spending the day with friends and doing what patrons do—trying to enjoy the resort. When the group was uncertain whether the slides were

available, they did not guess or sneak. They asked a Mont du Lac manager for permission. And rather than saying "no," the manager responded, "I'm not going to say anything." A jury could reasonably understand that response—made to a direct request—as tacit permission to proceed.

That is enough to require a trial. At minimum, a reasonable jury could find implied consent and reject Mont du Lac's effort to brand Stupak a trespasser. And a jury could also find Mont du Lac's acts and omissions played a substantial role in causing Stupak's catastrophic injuries. This case belongs where Wisconsin law and the summary-judgment standard place it: in front of a jury. The judgment should be reversed and the case remanded for trial.

Dated this 23rd day of January 2026.

By: *<u>/s/ Taylor Brandt Cunningham</u>*
Taylor Brandt Cunningham
BOLT LAW FIRM
2150 Third Avenue, Ste. 350
Anoka, MN 55303
(763) 406-7000
taylor.cunningham@boltlawfirm.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and 7th Cir. R. 32(c) because it contains 4,113 words, excluding the parts exempted by Fed. R. App. P. 32(f). I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Seventh Circuit Rule 32(b) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using Book Antiqua font that is 12 point or larger.

Dated this 23rd day of January 2026.

*/s/ Taylor Brandt Cunningham*

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated this 23rd day of January 2026.

*/s/ Taylor Brandt Cunningham*